FILED BY CLERK

JAN 10 2008

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

)          2 CA-JV 2007-0014
)          DEPARTMENT A
)
IN RE MICHELLE G.                          )          O P I N I O N
)
)
)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 10803904

Honorable Theodore J. Knuck, Judge

VACATED

Barbara LaWall, Pima County Attorney
  By Ellen R. Brown                                                          Tucson
                                                         Attorneys for State

Robert J. Hooker, Pima County Public Defender
  By Susan C. L. Kelly                                                       Tucson
                                                    Attorneys for Minor

H O W A R D, Presiding Judge.

¶1        Michelle G. appeals from the juvenile court's January 2007 order that she pay

restitution to the victim of criminal damage she had committed in 2004. She contends the

juvenile court abused its discretion by ordering restitution after her disposition had become final. We agree and therefore vacate the order.

**Factual and Procedural Background**

¶2        On February 3, 2005, Michelle was adjudicated delinquent on various charges stemming from multiple delinquency petitions. In the December 2004 delinquency petition, the state alleged that Michelle had "caused damage in an amount of more than $250 but less than $2,000" to a car.[1] This charge was dismissed pursuant to Michelle's plea agreement, and Michelle supplied no factual basis for it. A written plea agreement was not filed with the court. At the change-of-plea hearing, the court asked whether there was "any restitution." The prosecutor replied that "there [was] a restitution cap of $2,500," and the court informed Michelle that she "could have to pay up to $2,500 in restitution on any of [the counts against her], even the ones that [were] dismissed."[2]

¶3        The juvenile court set a disposition hearing for March 9, 2005, but Michelle ran away from home approximately a week before the hearing, and the disposition did not take place as scheduled. Michelle was detained on June 6, and the state filed a new delinquency petition. On July 21, the juvenile court adjudicated Michelle delinquent on charges stemming from the June petition and, in a disposition order encompassing that and

_____

[1]At the January 2007 restitution hearing, the victim testified that Michelle had caused damage to his wall, not his car. Michelle has not denied having damaged the victim's wall nor claimed there was insufficient evidence that she had done so.

[2]Michelle does not contend on appeal that the court's statement did not accurately reflect her plea agreement.

the earlier adjudication, imposed a one-year term of juvenile intensive probation supervision. Although the victim on the criminal damage charge had submitted a restitution affidavit to the prosecutor before the original date set for disposition, the state did not request restitution at the July 21 hearing. The juvenile court did not set a later date by which restitution could be requested but informed Michelle that she had "a right to appeal [the court's] decision placing [her] on probation . . . within 15 days."

¶4 Between September 2005 and May 2006, the state filed multiple new delinquency petitions and petitions to revoke Michelle's probation. She was adjudicated delinquent and found in violation of her probation on those petitions. As a result, her probation was revoked, she spent time in residential treatment facilities, and she was eventually committed to the Arizona Department of Juvenile Corrections (ADJC) on June 1, 2006.

¶5 The state did not raise the issue of restitution for the criminal damage charge at any of the hearings on the new delinquency petitions and petitions to revoke probation. However, on September 15, 2006, it filed a motion to set a status hearing, in which it asked the juvenile court to order restitution on the 2004 criminal damage charge, claiming such an order had been "inadvertently left out of probation conditions" imposed in July 2005. At the subsequent status hearing on October 27, 2006, Michelle's counsel objected that the state's restitution request was untimely. The court stated in its minute entry that it "believe[d] there [was] an excuse for the late filing." Noting that the victim's restitution

affidavit had been previously disclosed to Michelle, the court set a restitution hearing for November 30, 2006, and ordered the prosecutor to "file a motion [or] whatever briefs she want[ed] to file by November 16, 2006."

**¶6** The state filed a motion for restitution, in which it claimed the victim had submitted a restitution affidavit to the juvenile court on November 23, 2004. The state acknowledged, however, that it had failed to raise the issue of restitution at the July 2005 disposition hearing or at any time before the victim contacted the county attorney's victim-rights advocate a year later. Although the state claimed its "oversight" was "due in large part to the conduct of the juvenile," it failed to explain how Michelle was at fault for its failure to timely request restitution on the victim's behalf. The state argued that the juvenile court was statutorily required to order restitution and that, because the state had disclosed the victim's restitution affidavit to Michelle on December 28, 2004, Michelle had "had notice that restitution was required" before she entered into the plea agreement.

**¶7** Michelle appeared telephonically at the oral argument on the state's motion and informed the court she believed she was due to be released from ADJC on January 2, 2007. Over Michelle's objection, the juvenile court set a restitution hearing for January 24, 2007.[3] At that hearing, the victim testified that the original estimate to repair his property

---

[3]Although Michelle had notice of the restitution hearing, she did not appear at the hearing. The prosecutor told the juvenile court she had contacted ADJC and had been told that Michelle was no longer there and that her family had moved. It is unclear from the available record whether, at the time of the restitution hearing, Michelle had satisfied all consequences imposed on her as a result of her delinquency adjudications.

4

had been $625, but the repair estimate had increased over time to $950. The juvenile court found that "restitution should have come before the Court in 30 to 60 days" and ordered Michelle to pay $625.

**Discussion**

¶8 Preliminarily we address the state's assertion, made initially in its motion for restitution and repeated on appeal, that a request for restitution had been timely filed with the juvenile court. The clerk's record on appeal does not support this claim. The state has not directed us to, nor have we found, the affidavit of the victim that the state claimed had been submitted to the juvenile court in November 2004. Moreover, the victim's testimony at the restitution hearing, which was not set until October 27, 2006,[4] made clear that he had submitted information about restitution to the county attorney, not the court. We therefore assume for purposes of this appeal that the victim timely submitted an affidavit or other proof of loss to the county attorney, but that the information was not, in turn, timely submitted to the juvenile court on the victim's behalf.

¶9 Michelle argues that the juvenile court abused its discretion in ordering restitution more than a year after the disposition hearing on the underlying charge. "We review a juvenile court's restitution order for an abuse of discretion." *In re Andrew C.*, 215 Ariz. 366, ¶ 6, 160 P.3d 687, 688 (App. 2007).

---

[4]The status hearing at which the court set the restitution hearing took place on October 27, 2006. The juvenile court signed the minute entry from that hearing on November 2, 2006, and the order was filed with the clerk of the court on the same date.

**¶10** When "a juvenile is adjudicated delinquent, the court, after considering the nature of the offense . . . shall order the juvenile to make full or partial restitution to the victim of the offense for which the juvenile was adjudicated . . . ." A.R.S. § 8-344(A). A victim of charges dismissed pursuant to a plea agreement may exercise a victim's statutory rights. A.R.S. § 8-383.01(A). A victim has a right to be present and address the court at any disposition proceeding and to present evidence regarding restitution at any predisposition or disposition proceeding. A.R.S. § 8-405; *see also* A.R.S. § 8-400. "Before the court can impose an order of restitution, a victim must present evidence to establish that the victim's loss relates directly to the juvenile's offense and to provide a basis for setting an amount that is not speculative." *In re Alton D.*, 196 Ariz. 195, ¶ 9, 994 P.2d 402, 404 (2000) (citation omitted).

**¶11** "[T]he proper approach to restitution is to include it as part of, or as an order entered concurrently with, the remainder of the disposition." *In re Kevin A.*, 201 Ariz. 161, ¶ 7, 32 P.3d 1088, 1090 (App. 2001). A juvenile court may hold restitution open beyond the disposition hearing by setting a later, reasonable deadline by which restitution claims may be made or are thereafter barred. *See Alton D.*, 196 Ariz. 195, ¶ 19, 994 P.2d at 407-08; *In re Frank H.*, 193 Ariz. 433, ¶ 15, 973 P.2d 1194, 1197-98 (App. 1998). But "[i]ssuance of a separate restitution order after the rest of the disposition is an exception permitted only by court-ordered extension." *Kevin A.*, 201 Ariz. 161, ¶ 7, 32 P.3d at 1090.

**¶12** A juvenile court abuses its discretion by ordering restitution after it has issued a final disposition order. *See Alton D.*, 196 Ariz. 195, ¶ 1, 944 P.2d at 403 (restitution claims "barred" after entry of final order); *Kevin A.*, 201 Ariz. 161, ¶ 2, 32 P.3d at 1089 (entry of restitution order precluded after final disposition). A disposition order is final when it "'disposes of all issues . . . before the Juvenile Court.'" *In re Eric L.*, 189 Ariz. 482, 483, 943 P.2d 842, 843 (App. 1997), *quoting In re Maricopa County Juvenile Action No. J-74222*, 20 Ariz. App. 570, 571, 514 P.2d 741, 742 (1973). Thus, "when restitution remains at issue," a disposition order is "not final until restitution has been considered and ruled upon." *Id.* at 484, 943 P.2d at 844; *see also Alton D.*, 196 Ariz. 195, ¶ 9, 944 P.2d at 404 ("Restitution order constitutes the final order for appeal purposes.").

**¶13** In this case, a formal claim for restitution was not filed in the juvenile court until over a year after the disposition hearing. Although the victim had submitted a restitution affidavit to the prosecutor well in advance of disposition, the prosecutor did not provide the affidavit to the court or otherwise ask the court to consider restitution before or at the disposition hearing. No written "[d]ispositional [i]nvestigation and [r]eport," which should have included information regarding restitution claims, if any, was submitted to the juvenile court pursuant to Rule 30, Ariz. R. P. Juv. Ct.[5] And the victim did not exercise his

---

[5]The juvenile court's disposition order states that Michelle "waive[d] the requirement of a written report as to the new adjudication." *See* Ariz. R. P. Juv. Ct. 30(A)(3) ("Upon stipulation of the parties and order of the court, the disposition report may be waived if the victim did not provide a written impact statement as provided by law."). The record does not indicate a waiver with regard to Michelle's adjudication on the December 2004 petition.

right to apply to the court directly for restitution, nor did he present any evidence to the court at or before disposition.

¶14 Although Michelle's plea agreement included a restitution cap, we believe the mere mention of a restitution cap at the change-of-plea hearing was insufficient to cause restitution to be at issue at the disposition hearing. At most, the restitution cap indicated that a restitution claim might be forthcoming. No claim having been made to the juvenile court at or before the disposition hearing, however, the court's disposition order resolved all issues that had been placed before it. Because the juvenile court did not set a deadline allowing later claims for restitution, the issue of restitution was not held open beyond the disposition, and the disposition order thus became final and appealable when it was signed by the judge and filed by the clerk of the court in July 2005. *See* Ariz. R. P. Juv. Ct. 89(A) ("A final order shall be in writing and signed by the judge . . . ."). Indeed, the court told Michelle she had the right to appeal that order within fifteen days. Neither party appealed. Therefore, the juvenile court lacked any authority to reopen the final order and abused its discretion by entering a restitution order in January 2007. *See Alton D.*, 196 Ariz. 195, ¶ 13, 944 P.2d at 405.

¶15 We are aware, of course, that the victim in this case was apparently relying on the prosecutor to timely assert his claim for restitution as he was permitted to do under A.R.S. § 8-416(C). This is not the first case we have reviewed in which the county attorney has failed in its duty to request restitution for a victim. This time, however, the courts

cannot save the victim from the county attorney's negligence. We note that, although "[t]he failure to use reasonable efforts to perform a duty or provide a right is not a cause to seek to set aside an adjudication or disposition," A.R.S. § 8-415(A), "[a] victim has the right to recover damages from a governmental entity responsible for the intentional, knowing or grossly negligent violation of the victim's rights under the victims' bill of rights, any implementing legislation or court rule." A.R.S. § 8-416(B) (citation omitted). The special concurrence correctly notes that the victim will be required to clear additional hurdles in order to receive restitution from the state based on the state's "nonfeasance." *Infra* ¶ 20; *see also infra* n.6. But, as noted above, *supra* ¶ 6, the state's professed reason for its failure to perform the simple ministerial act of filing the victim's claim with the court is invalid.

**Conclusion**

¶16       Based on the foregoing, we hold the trial court abused its discretion when it imposed restitution on Michelle G. We therefore vacate the restitution order. *See Kevin A.*, 201 Ariz. 161, ¶ 12, 32 P.3d at 1091.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


P E L A N D E R, Chief Judge, specially concurring.

9

**¶17** This case illustrates the tension that can occur between the need for prompt resolution of juvenile cases, including a juvenile delinquent's right "to receive a timely, final disposition," and a victim's right to seek and recover restitution for damage caused by juvenile offenders. *Alton D.*, 196 Ariz. 195, ¶ 7, 994 P.2d at 404; *see also Kevin A.*, 201 Ariz. 161, ¶ 11, 32 P.3d at 1090. I reluctantly join in this decision because I believe the law compels me to do so, but I write separately to express my concerns about the unfortunate and apparently recurring circumstances that produce a result such as this—where an innocent and diligent victim somehow gets lost in the shuffle, is unable to recover on a valid restitution claim and, therefore, ends up being the real loser despite the victim's constitutional and statutory right to receive restitution. *See* Ariz. Const. art. II, § 2.1(A)(8); A.R.S. § 8-344(A).

**¶18** Procedurally, if anyone was prejudicially disadvantaged here, it would appear to be the victim, not Michelle. At her change-of-plea hearing in February 2005, Michelle said she understood that she would "have to pay" for any property damage she had caused. She does not dispute that, apparently as early as November 2004, the victim's restitution affidavit had been furnished not only to the prosecutor but also to her. For reasons that are not clear in the record, however, the state did not request restitution at the July 2005 disposition hearing, nor did the juvenile court address or order restitution at that hearing or in its disposition order. The court told Michelle she could appeal from that order within fifteen days, but she neither did so nor suggested that the order was not yet final and

10

appealable. Although the victim did not cause or contribute to the delay, his restitution claim was not addressed until the state finally requested an award on his behalf in September 2006, and the court, after a noticed hearing that Michelle failed to even attend, then ordered restitution in early 2007.

¶19 Unlike *Alton D.*, this is not a case in which the juvenile court set a reasonable deadline, or for that matter any time limit, within which a restitution claim had to be submitted. *See Alton D.*, 196 Ariz. 195, ¶¶ 2, 19, 994 P.2d at 403, 406-07. And, unlike the situation in *Kevin A.*, in this case the juvenile court never indicated that "'restitution [would] be closed'" at a certain point in time. *Kevin A.*, 201 Ariz. 161, ¶ 3, 32 P.3d at 1089; *see also In re Richard B.*, 216 Ariz. 127, ¶ 17, 163 P.3d 1077, 1081 (App. 2007). Nor did the victim fail to comply with any deadline or other order concerning restitution. *Compare Alton D.*, 196 Ariz. 195, ¶ 19, 994 P.2d at 407 (holding that "when, in light of the circumstances of a particular case, the court sets a reasonable deadline by which victims must present their restitution claims and supporting evidence, any victim who fails to comply is barred from recovery"), *and Kevin A.*, 201 Ariz. 161, ¶¶ 4, 8, 32 P.3d at 1089, 1090 (when court ordered restitution "closed" after date certain and "victim filed no timely statement" and provided no verified statement to prosecutor, subsequent restitution award invalid), *with Richard B.*, 216 Ariz. 127, ¶ 18, 163 P.3d at 1081 (restitution award upheld when tardy claim caused no prejudice or undue delay to juvenile's final disposition and

11

when record "support[ed] the juvenile court's finding of good cause to allow its restitution order").

¶20 In short, any "falling through the cracks" or "dropping of the ball" in this case was solely attributable to the state's nonfeasance and the juvenile court's failure to fulfill its statutory mandate under A.R.S. § 8-344(A). As a result, the victim is left "holding the bag" on his restitution claim, and Michelle remains unaccountable for the damage she caused.[6] Nonetheless, in *Alton D.* our supreme court clearly counseled against open-ended, indefinite time frames for presenting restitution claims. 196 Ariz. 195, ¶¶ 8-11, 994 P.2d at 404. Although distinguishable on its facts, that case seemingly does not condone a juvenile court's essentially re-opening an otherwise final disposition order many months or even years later for purposes of awarding or adjusting restitution, particularly without expressly finding good cause for the delay and no prejudice to the juvenile. For these reasons, although I cannot disagree with the principal opinion's analysis or conclusion, the ultimate result strikes me as both unfortunate and unfair. Hopefully the state and the juvenile courts will take heed in the future by vigilantly and timely including victims' restitution claims in the disposition process.

---

[6]The victim's statutory right to recover damages for any "intentional, knowing or grossly negligent" governmental conduct appears rather illusory because conduct worse than mere negligence must be shown and because that same statute neither "alters [n]or abrogates any provision for immunity provided for under common law or statute." A.R.S. § 8-416(B). In addition, any disenfranchised victim seeking relief under § 8-416(B) presumably would have to comply with the notice-of-claim filing requirements and time deadlines imposed by A.R.S. § 12-821.01.

_____
JOHN PELANDER, Chief Judge